UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JEREL BRAY-SEAN JOHNSON,                )
                                         )
        Petitioner,                      )
                                         )        Nos.    3:20-CV-534-TAV-DCP
v.                                       )                3:20-CV-537-TAV-DCP
                                         )                3:18-CR-119-TAV-DCP
UNITED STATES OF AMERICA,                )                3:19-CR-18-TAV-DCP
                                         )
        Respondent.                      )

## REPORT AND RECOMMENDATION

Petitioner previously filed a Pro Se Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 28 U.S.C. § 2255 [Doc. 1].[1]  This case has been referred [Doc. 10] by District Judge

Varlan to the undersigned for a report and recommendation regarding disposition of Petitioner's

claim that his former counsel failed to file a requested appeal.  An evidentiary hearing was held on

March 9, 2022.  Assistant United States Attorney Luke McLaurin appeared on behalf of the

Government.  Attorney Mike Whalen appeared on behalf of Petitioner, who was also present.  For

the reasons set forth herein, the Court **RECOMMENDS** that the sole remaining claim in

Petitioner's § 2255 motion be **DENIED**.

## I.      BACKGROUND

In 2015, Petitioner was convicted of using, carrying, and brandishing a firearm during and

in relation to a crime of violence, conspiring to distribute and possess with intent to distribute

methylone, and two counts of Hobbs Act Robbery, and Petitioner was sentenced to 75 months'

imprisonment [Doc. 195, 3:13-CR-32].  In 2018, Petitioner was released from prison to Midway

Rehabilitation Center [Doc. 20 ¶ 38, 3:19-CR-18].  Petitioner was away from the facility searching

---

[1] Unless otherwise indicated, all citations to the record are found on the docket of Case No.
3:20-CV-534.

for a job and did not return [*Id.*]. Petitioner was subsequently arrested when he was found asleep in a car with a loaded, stolen firearm under his seat [Doc. 3 p. 2, 3:19-CR-18]. Petitioner was charged with escaping from custody in violation of 18 U.S.C. §§ 751 and 4082 and possessing a firearm and ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) [Doc. 2, 3:18-CR-119]. At his Initial Appearance on August 23, 2018, the undersigned appointed Attorney Bobby E. Hutson, Jr., and the Federal Defender Services of Eastern Tennessee ("FDS") to represent Petitioner [Doc. 10, 3:18-CR-119].

A plea agreement was filed on February 14, 2019, in Case No. 3:19-CR-18 reflecting that Petitioner would plead guilty to possession of a stolen firearm, be sentenced to 120 months' imprisonment, and that the indictment in 3:18-CR-119 would be dismissed, removing the risk of the 15-year minimum penalty under the Armed Career Criminal ("ACC") Act [Doc. 3, ¶¶ 2, 6, 3:19-CR-18]. The Government agreed that a sentence of 120 months was an appropriate disposition because it was "unclear whether [Petitioner] would have been deemed an armed career criminal in Case No. 3:18-CR-119 based on his criminal history."[2] On April 9, 2019, Petitioner pleaded guilty to one count of possessing a stolen firearm, in violation of 18 U.S.C. § 922(j), consistent with the agreement [Doc. 3, 3:19-CR-18]. The United States Probation Office calculated his guideline range as 37–46 months' imprisonment, noting the parties' agreed term of 120 months, pursuant to the Rule 11(c)(1)(C) plea agreement [Doc. 11 ¶¶ 68, 70, 3:19-CR-18].

On September 11, 2019, Attorney Hutson filed a Motion to Substitute Attorney on behalf of Petitioner, reporting that the attorney/client relationship appeared to be irretrievably broken [Doc. 13, 3:19-CR-18]. That matter was referred to the undersigned [Doc. 15, 3:19-CR-18], and on October 4, 2019, an order was entered granting the motion, relieving Attorney Hutson and FDS

---

[2] This expectation was based on Petitioner's 2015 convictions for two robberies at different locations, followed by a drug trafficking conspiracy [Doc. 10 p. 2, 3:20-CV-534].

2

of further representation, and substituting and appointing Attorney Michael McGovern ("Attorney McGovern") as counsel of record for Petitioner [Doc. 18, 3:19-CR-18].  On November 24, 2019, Attorney McGovern filed a sentencing memorandum explaining why the agreed upon term was appropriate [Doc. 24, 3:19-CR-18].  At the sentencing hearing on November 26, 2019, Judge Varlan accepted the agreement and sentenced Petitioner to 120 months' imprisonment in addition to dismissing case number 3:18-CR-119 [Doc. 27, 3:19-CR-18].  Petitioner did not appeal, but he later filed the instant motion ("§ 2255 motion") on December 18, 2020 [Doc. 1].

In his § 2255 motion, Petitioner alleges both prosecutorial misconduct and ineffective assistance of counsel [*Id.*].  Judge Varlan entered an order denying Petitioner's claims of prosecutorial misconduct and claims of ineffective assistance of counsel for failure to investigate and to obtain the presentence report [Doc. 10 p. 3].  The order further certified that any appeal on those claims would not be taken in good faith and would be totally frivolous [*Id.*].  Thus, Petitioner's only remaining claim is for ineffective assistance of counsel for failure to file a direct appeal.

In Petitioner's sole remaining claim, he asserts that Attorney McGovern failed to file a direct appeal "as [Petitioner] directed" [Doc. 1 p. 5].  Petitioner states this is the reason he did not raise any of the alleged sentencing issues on appeal [*Id.* pp. 4–5].  Judge Varlan referred this matter to the undersigned to conduct an evidentiary hearing to determine whether Petitioner timely requested that Attorney McGovern file a notice of appeal on his behalf, to appoint counsel to represent Petitioner on this matter, and to include a recommendation regarding a certificate of appealability on the remaining issue in the § 2255 motion [Doc. 10 pp. 9–10].  Subsequently, the undersigned appointed Attorney Mike Whalen to represent Petitioner in the evidentiary hearing [Doc. 11], which was held on March 9, 2022.

## II.    SUMMARY OF THE TESTIMONY

During the March 9 hearing, Petitioner testified he was originally represented in the case underlying the instant § 2255 motion—Case No. 3:18-CR-119—by Attorney Bobby Hutson, who served as his counsel for approximately 15 months.  At the time Petitioner was offered a plea agreement, Attorney Hutson reviewed the agreement with him.  Petitioner stated he eventually signed the plea agreement because he had assumed he would be classified as an ACC for sentencing purposes.  Petitioner testified he agreed to a sentence of 120 months' imprisonment because he believed he could have received 180 months or more had he been convicted as an ACC without a plea agreement.  Petitioner stated he believed he would be classified as an ACC because of his previous charge and because Attorney Hutson told him he would likely be "careered out."

Petitioner related that Attorney Hutson was eventually relieved of his representation of Petitioner and that Attorney McGovern was substituted as his counsel.  Petitioner stated he was in Ocilla, Georgia when the substitution of counsel occurred, and he did not speak with Attorney McGovern while he was in Ocilla.  When he returned to Knoxville, Tennessee around October 2019, Petitioner spoke with Attorney McGovern on his first day back in Knoxville.  Petitioner stated he talked with Attorney McGovern about what he wanted to do, and he specifically told him he would like to appeal his case.  Petitioner testified he did not understand anything about the procedure for changing his plea and filing an appeal.  Petitioner further testified that Attorney McGovern came to see him immediately after his sentencing in November 2019 while Petitioner was in United States Marshal Service lockup (hereinafter "lockup"), and Attorney McGovern told him he would file an appeal on Petitioner's behalf.

4

Petitioner testified he asked Attorney McGovern for all his legal documentation thirty days after his sentencing, and he received it in January 2020;[3] however, nothing in the documentation related to his appeal. Petitioner stated Attorney McGovern also indicated he no longer represented Petitioner because of the ineffective assistance of counsel claim contained within his § 2255 motion. Petitioner further testified that he filed his § 2255 motion in December 2020, but later stated it could have been December 2019, as he claims Attorney McGovern referenced the filing of the § 2255 motion in a letter he purportedly sent to Petitioner in January 2020.[4] Petitioner testified he had no more communication with Attorney McGovern after receiving his legal documentation from him.

Petitioner testified he asked Attorney McGovern in October 2019 whether he should proceed with sentencing, and Petitioner stated Attorney McGovern told him he should go through with sentencing as that is how he would be able to later file an appeal. Petitioner stated he believed he spoke with Attorney McGovern at least twice regarding his desire to file an appeal. Petitioner testified he never told Attorney McGovern that he had changed his mind regarding his desire to file an appeal.

On cross examination, Petitioner acknowledged that he pleaded guilty and that he was sentenced by Judge Varlan. Petitioner related he remembered Judge Varlan stating at his sentencing hearing that he had fourteen days to file a notice of appeal and that the Clerk of Court

---

[3] As discussed in the analysis section, Petitioner's testimony as to the timing of events was in conflict with the recorded dates of his correspondence to and from Attorney McGovern that was later entered into evidence.

[4] *See supra* n. 3. Petitioner's § 2255 motion was filed on December 18, 2020 [Doc. 1, Exh. 1]. There was no letter admitted into evidence from Attorney McGovern to Petitioner dated in January 2020. Attorney McGovern's letter transmitting Petitioner's file was dated November 28, 2020, and it referenced Petitioner's request for the file by letter postmarked November 23. [Exh. 5]. This suggests that Petitioner may have incorrectly stated when he requested the legal documentation from Attorney McGovern.

5

could file the notice of appeal for him. Petitioner testified he never asked the Clerk to file a notice of appeal on his behalf because he had asked his lawyer to do so. Petitioner testified he asked Attorney McGovern to file a notice of appeal at their initial meeting in October 2019 and again in November 2019 while Petitioner was in lockup immediately following the sentencing hearing. Petitioner testified Attorney McGovern told him he would file the appeal and he would do so after he provided Petitioner with his legal documentation.

AUSA McLaurin then questioned Petitioner regarding his testimony on direct examination concerning a letter he sent to Attorney McGovern approximately thirty days after his November 26, 2019, sentencing. Petitioner testified he sent Attorney McGovern a letter requesting his legal documentation in January 2020.[5] Petitioner stated this was the second request for his legal documentation, as he had initially requested it from Attorney McGovern on the day of sentencing. Petitioner testified he received his legal documentation from Attorney McGovern before filing his § 2255 motion in December 2020.[6]

The Government then reviewed Petitioner's § 2255 motion [Exh. 1] with him. Petitioner testified the handwriting on the motion was not his own but was instead the handwriting of one of his "good friends." Petitioner stated he had this individual draft the motion because he needed help and this individual had been studying the law. The Government asked Petitioner if he told this individual what to write in the § 2255 motion, and Petitioner responded he told the individual

> exactly what was going on . . . once I told him what I said . . . he said . . . well this is how you should go about the situation. He gave me information on certain things that I should put in there, in the

---

[5] *See supra* n. 4. There was no letter admitted into evidence from Petitioner to Attorney McGovern requesting his legal file dated in January 2020.

[6] The Exhibits later admitted into evidence demonstrate that Petitioner requested his file from Attorney McGovern in a letter postmarked November 23, 2020 [Exh. 4], and that Attorney McGovern transmitted the file to Petitioner under cover of letter dated November 28, 2020 [Exh. 5].

6

motion. But I literally just talked to him, and he wrote it down for me.

The Government then called Attorney McGovern to the stand. Attorney McGovern is a lawyer with offices in Knoxville, Tennessee, and he has practiced as an attorney for forty (40) years with his principle focus being criminal law. Attorney McGovern, who testified he is familiar with an attorney's responsibilities when representing a client who desires to file an appeal, specifically stated, "You file it. It's like a statute of limitations . . . . all criminal defense lawyers know you file an appeal if your client asks you to."

During the hearing, Attorney McGovern acknowledged that he recognized Petitioner as a former client he had represented in a federal criminal matter, predominately for the sentencing stage. Attorney McGovern was asked if he advised Petitioner of his appeal options at any point during his representation, and he responded, "I'm sure that I did. . . . I don't have a specific recollection of talking to him, but I talk to all my clients about appeals, review plea agreements . . . which, you know, has provisions dealing with appeals . . . it's just a routine of mine."

The Government asked Attorney McGovern if Petitioner ever asked him to file a notice of appeal in his case, and Attorney McGovern responded,

> No, he did not. . . . well, let me correct that. Not within the fourteen days following judgment, he didn't ask me to file an appeal. Years later he asked me to file an appeal, but he didn't immediately after sentencing.

Attorney McGovern further stated that he would have filed an appeal had Petitioner asked him to do so. When asked if he had spoken with Petitioner in the courtroom or in lockup following the sentencing hearing, Attorney McGovern responded,

> No. . . . there's 30 seconds from the time, you know, judgment is entered, to the time defendants are ushered out of the courtroom. Thirty seconds to a minute. The marshals, you know, take them straight [out] of the courtroom. So, I didn't speak to him then,

7

maybe 'good luck,' you know, and then I did not see him in the
lockup.

Attorney McGovern said he later engaged in written communication with Petitioner after receiving a letter from Petitioner in April 2020.

In reviewing Petitioner's first letter [Exh. 2 ("First Letter")], Attorney McGovern stated he received it on April 22, 2020. Attorney McGovern testified the First Letter rehashed some of the same arguments made by Petitioner and his former counsel (Attorney Hutson) about the plea agreement; stated that Petitioner wanted Attorney McGovern to file a motion on his behalf to get back before the judge; and indicated Petitioner would be filing a § 2255 motion. Attorney McGovern stated it seemed Petitioner was complaining about Attorney Hutson and that he wanted Attorney McGovern to file a § 2255 motion against Attorney Hutson. Attorney McGovern testified Petitioner did not request a copy of his file in the First Letter. Attorney McGovern stated he promptly responded to the First Letter.

The Government reviewed the first response letter Attorney McGovern sent to Petitioner [Exh. 3 ("First Response")]. Attorney McGovern stated that in his response, he informed Petitioner that he was no longer representing him, and he referred Petitioner to the Clerk's office for assistance. Attorney McGovern noted he mailed the First Response on the same day he received the First Letter—April 22, 2020.

Attorney McGovern was then asked to review the second letter he received from Petitioner [Exh. 4 ("Second Letter")]. Attorney McGovern described the Second Letter as antagonistic, stating Petitioner threatened, among other things, to file a complaint with the Tennessee Bar Association for failure to surrender Petitioner's case file. Attorney McGovern stated the handwriting in the Second Letter appeared to be completely different from the handwriting in the First Letter, and he noted the Second Letter was unsigned. Attorney McGovern stated the Second

8

Letter's envelope was postmarked November 23, 2020. Attorney McGovern said he promptly mailed a response to Petitioner.

Attorney McGovern reviewed the second response letter he sent to Petitioner [Exh. 5 ("Second Response")]. Attorney McGovern stated the Second Response was dated November 28, 2020, and it would have been sent a day or two after receiving Petitioner's Second Letter. In his response, Attorney McGovern informed Petitioner he was sending the entire case file to him and that he would not be retaining copies. Attorney McGovern also stated in the Second Response, "Finally, I would note that despite the threatening tone of your letter, this is the *first* request that you have made for your file." (emphasis in original).

After sending the Second Response, Attorney McGovern then received a third letter from Petitioner, dated February 9, 2021. [Exh. 6 ("Third Letter")]. In the Third Letter, Petitioner states, "Man[,] I need you to really file an appeal for me. I just tried to prison house this ok and it's a total blowup!" Attorney McGovern stated a copy of the Government's response to the § 2255 motion had been attached to the Third Letter, and therefore he took the letter to mean that "Petitioner . . . filed a § 2255, and it wasn't going well." When asked if Petitioner said anything in Third Letter about the tone of the Second Letter, Attorney McGovern said Petitioner wrote, "I apologize for whatever was said in the letter to you. I paid someone and trusted him to do right and he did a horrible job! Please forgive me." Attorney McGovern stated this was the first time Petitioner had requested he file an appeal, and that this was "way after the time for filing an appeal had expired." Attorney McGovern stated he did not file an appeal at that point because it would have been untimely. Attorney McGovern noted the handwriting in the Third Letter was different from the handwriting in the Second Letter, but consistent with the handwriting in the First Letter. Attorney McGovern testified he sent a response to the Third Letter.

9

In his third response letter, dated February 22, 2021 [Exh. 7 ("Third Response")], Attorney McGovern informed Petitioner he could no longer represent him because of the § 2255 motion, as it had created a conflict of interest between Petitioner and Attorney McGovern. Attorney McGovern also informed Petitioner he no longer had his file, as he had sent it to him last November, and he advised Petitioner that he would disregard and discard any further correspondence from him.

In summary, Attorney McGovern testified that Petitioner did not request that he file a notice of appeal within fourteen days of the entry of judgment in Petitioner's case. Attorney McGovern testified that in his approximately forty (40) years of practice, he has never failed to file a notice of appeal as directed, and none of his clients prior to Petitioner have ever complained that he failed to file a requested notice of appeal. Attorney McGovern stated he has, in fact, filed notices of appeal for his clients when they have so requested in the past.

On cross examination, Attorney McGovern testified that Petitioner had been upset when the two first met because Petitioner's prior counsel had negotiated a plea agreement on an 11(c)(1)(C) for a fixed term of fifteen (15) years' imprisonment.[7] Attorney McGovern stated that the parties had seemingly arrived at the fixed term because there had been an issue over the ACC sentencing enhancement that Petitioner was potentially facing, and he explained that when the Presentence Investigation Report ("PSR") came back and showed that he was not ACC status, Petitioner was unhappy with the negotiated fixed term in the plea agreement, and he wanted to go back to the guidelines sentence.

---

[7] The Court notes that the reference to fifteen (15) years is an obvious misstatement of no consequence as it had been established that the plea agreement provides for a fixed term of ten (10) years' imprisonment [Doc. 3, 3:19-CR-18].

10

Attorney McGovern stated that when he first met Petitioner, he had a copy of the PSR and that he had spoken with Attorney Hutson at length. Attorney McGovern stated that, when his clients are pleading or facing sentencing, he always talks to them about their appeal rights and appeal waivers because he knows they will be asked about it in court. Attorney McGovern stated he was sure the record would show that Petitioner had been informed by the judge at the change of plea hearing that he had a right to appeal, which the Clerk could file for him, if he so desired.

When asked if, in his practice, he would normally speak with his clients after sentencing about whether they wanted him to file an appeal or ask the Clerk to file an appeal on their behalf, Attorney McGovern responded that it was not his routine practice to do so, but that he has on occasion met with clients in lockup, particularly when there was no appeal waiver or when he thought there was a procedural issue with the sentencing proceedings. Where there had been an appeal waiver, no procedural errors during the sentencing, and the client had not previously indicated a desire to file an appeal, Attorney McGovern stated that he probably would not have a post-sentencing conference with the client.

Attorney McGovern reiterated that he did not believe he met with Petitioner in lockup following sentencing. Attorney McGovern acknowledged that he understood Petitioner was unhappy with the plea agreement, but "that ship had already sailed." Attorney McGovern stated he and Petitioner had discussed whether a motion should have been filed to set aside the plea or whether they should proceed to sentencing, but Petitioner had already made up his mind that he was going to proceed with the 11(c)(1)(C) plea. Attorney Whalen asked if Attorney McGovern recalled having told Petitioner that "if we do the sentencing, then we can move on to the next step." Attorney McGovern replied, "No", and further stated that did not sound like something he would say. Attorney McGovern testified he did not think Petitioner had an appealable issue at that point

and that he believed Petitioner's frustration with the plea had ended because he had decided to proceed with sentencing.

Turning back to the Third Letter, Attorney McGovern acknowledged that he had received all the pages that encompassed the letter, including the Government's response to the § 2255 motion that appeared to have been written on by Petitioner and that the filing date at the bottom of the Government's response showed it was filed on February 8, 2021. Attorney Whalen asked if it seemed reasonable or even possible that Petitioner had received a copy of the Government's response, made handwritten notes on it, and attached it to his Third Letter by the time it was sent on February 9, 2021. Attorney McGovern said it was possible.

Attorney McGovern again testified he has filed notices of appeal for clients in the past, and he understood his obligation regarding appeals to be that he must file an appeal if so requested, whether or not he agrees with the basis for the appeal. He described it as being similar to a statute of limitations and said, "You don't miss that." Attorney McGovern stated that it was possible a note or letter existed wherein he confirmed with Petitioner that he did not want to move to set aside the plea agreement and wanted to proceed with sentencing; however, he could not confirm that. Attorney McGovern further stated he was not aware of any notes he would have had indicating a specific discussion about waiver of appeal. Finally, when asked whether there was any mention made at the sentencing hearing that Petitioner had decided not to appeal, Attorney McGovern responded, "No."

On redirect examination, Attorney McGovern confirmed he had sent his entire file to Petitioner in November of 2020, and he did not retain any copies. He explained that his current file consists only of correspondence previously discussed—Exhibits 2 through 7.

Turning again to the Third Letter, Attorney McGovern stated that he responded to the Third Letter on February 22, 2021, and that the handwriting on the Government's response that was

12

included in the Third Letter was not his own, but it did look similar to the handwriting in the Third Letter. Although he could not confirm the specific day he received the Third Letter, he stated it would have likely been close to the day he sent his Third Response, February 22, 2021, as he is typically prompt in responding to correspondence.

Finally, Attorney McGovern testified that he could not recall having spoken to Petitioner at lockup following the sentencing hearing, that Petitioner did not request he file a notice of appeal either during or after the sentencing hearing, and that Petitioner did not ask him to file a notice of appeal within fourteen days of judgment being entered, nor complain about him not having filed a notice of appeal in any of the letters he sent to Attorney McGovern. Attorney McGovern stated the first time Petitioner requested that he file an appeal was in February 2021.

## III. POSITIONS OF THE PARTIES

Petitioner contends he is entitled to relief pursuant to 28 U.S.C. § 2255 because Attorney McGovern failed to file a direct appeal on his behalf as requested [Doc. 1 pp. 4 & 11]. Specifically, Petitioner claims he instructed Attorney McGovern to file an appeal when the two spoke after the sentencing hearing on November 26, 2019, while Petitioner was in lockup.

At the evidentiary hearing, Petitioner argued Attorney McGovern knew from the first time the two met in October 2019 that Petitioner was upset with the plea agreement. Petitioner claims Attorney McGovern told him he had to proceed with sentencing "to get to the next step, that's how we get you back in court." Petitioner argued someone in his position would have been unhappy with the sentence he received because he agreed to a plea with a much longer sentence than what was set forth in the PSR, and such an individual would have desired to file an appeal. Petitioner argued he followed through with sentencing only because he thought that was the necessary path for him to be able to file an appeal.

13

Petitioner contends that—despite the district judge informing him that he had fourteen days to file an appeal and that the Clerk could file a notice of appeal for him—he did not request the Clerk to file a notice of appeal because he had instructed Attorney McGovern to do so. Plaintiff noted that he fired his previous counsel because he was unhappy with the plea agreement, and so it is logical that he was still unhappy with the plea agreement when Attorney McGovern became his counsel. Petitioner asserts it is also logical to infer he went through sentencing because he wanted to get to the "next step" (an appeal of his case) because of how unhappy he was with his plea agreement, meaning that it is *illogical* he would have changed his mind about the plea agreement and accepted a much higher sentence than what was set forth in the PSR. However, despite Petitioner's misgivings regarding his plea agreement and sentencing, no appeal was ever filed on his behalf. Petitioner argued that his letters, the § 2255 motion itself, and his other actions evidence that he remained unhappy with the plea agreement and with the legal process overall. Petitioner thus requests for the Court to allow him to continue pursuing his appeal because he had the desire to do so prior to and directly following his sentencing, and because he timely instructed Attorney McGovern to file a notice of appeal on his behalf.

The Government argued that given the limited purpose of the hearing to determine whether Petitioner directed Attorney McGovern to file a notice of appeal on his behalf within fourteen days of sentencing, the ultimate issue centers on an assessment of Petitioner and Attorney McGovern's credibility. The Government noted that in § 2255 proceedings, it is presumed that counsel acted in a constitutionally effective manner, and it is Petitioner's burden to show that his counsel was constitutionally ineffective. The Government asserts Petitioner has failed to meet his burden in this case.

The Government argued that while Petitioner maintains he instructed Attorney McGovern to file an appeal when they spoke at lockup following the sentencing hearing, Attorney McGovern

14

testified he did not meet with Petitioner in lockup after sentencing. The Government argued Attorney McGovern is an experienced and practiced criminal defense attorney, and he was able to clearly articulate his obligations when a client asks him to file an appeal. Specifically, Attorney McGovern understood that if a client requests for an appeal to be filed, that is exactly what he must do. The Government reiterated that Attorney McGovern testified Petitioner never directed him to file an appeal.

The Government related that the evidence in this case supports a finding that Petitioner did not direct Attorney McGovern to file an appeal. For example, Petitioner testified he sent a letter to Attorney McGovern requesting his legal file thirty days after his November 26, 2019 sentencing, but he later said he sent that letter in January 2020. The evidence suggests Attorney McGovern did not receive a letter from Petitioner requesting his file until the November 2020 Second Letter. The Government noted that Petitioner sent his First Letter to Attorney McGovern in April 2020, but neither mentioned wanting a copy of his legal file nor made mention of Attorney McGovern's alleged failure to file an appeal. In fact, Petitioner thanked Attorney McGovern for representing him and expressed that he wanted Attorney McGovern to represent him for purposes of his § 2255 motion. The Government related that the tone and substance of the First Letter is not reflective of an individual who would be upset that his attorney failed to file an appeal as directed.

In addition, the Government argued that the date stamp on the April 12, 2020 First Letter directly contradicts Petitioner's testimony. Petitioner testified he sent a letter to Attorney McGovern in January 2020 requesting his legal file, but no such letter has been produced. The only documented request of Petitioner's file appears to be the November 2020 Second Letter. Furthermore, while Attorney McGovern testified that he sent his entire file to Petitioner in November 2020 as requested, Petitioner has produced no evidence from the file documenting a request to file an appeal.

15

The Government notes that there is no indication that Petitioner even desired to file an appeal until the February 9, 2021 Third Letter and that Petitioner does not state that Attorney McGovern failed to file an appeal as previously directed—only that he wanted him to file an appeal at *that* time. The Government argues this appears to be a situation where Petitioner realized it may have been beneficial to file an appeal when one would have been timely, but he now has remorse for not doing so earlier and is seeking to blame his counsel for that result. In addition, the Government noted it is entirely possible that Petitioner had not initially believed that he had actually requested his attorney to file an appeal until he received assistance from a "jailhouse lawyer," who may have informed Petitioner that may be a good argument to make when he drafted Petitioner's § 2255 motion. The Government points to Petitioner's letters to Attorney McGovern expressing no concern about the lack of an appeal being filed.

The Government thus argues that the evidence of record discredits Petitioner and supports Attorney McGovern's testimony that he was never directed to file a notice of appeal. Furthermore, after discussions with Petitioner about withdrawing the plea, Attorney McGovern had a well-founded belief that Petitioner had made up his mind *not* to pursue an appeal when he decided to sign the plea agreement and proceed with sentencing. The Government emphasized that pursuing efforts to withdraw the plea would have been the best way to attempt to resolve the issue as opposed to making the request on appeal at the circuit court level. The Government therefore requests Petitioner's last claim in his § 2255 motion be dismissed.

## IV.    ANALYSIS

In pertinent part, Section 2255(a) of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution." In order to obtain relief for an alleged constitutional error, the record must reflect a constitutional

16

error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). The burden is on the petitioner to establish the claims arising out of the petition. *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

When the alleged constitutional error is ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). That is, the petitioner must: (1) establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland,* 466 U.S. at 687, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); and (2) demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

In the context of an appeal, "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Flores-Ortega*, 528 U.S. at 477). In *Flores-Ortega* the Supreme Court held that an attorney's failure to perfect a direct appeal upon his client's request is a per se Sixth Amendment violation. 528 U.S. at 477. Therefore, if counsel fails to file a direct appeal upon request, a defendant is entitled to a delayed appeal without having to show any likelihood of success on the merits. *Id.*; *see Regalado*, 334 F.3d at 525.

Absent explicit instructions to appeal, an attorney is only required to consult with his client about the advantages and disadvantages of an appeal and ascertain the client's wishes. *Regalado*, 334 F.3d at 525. "If consultation occurred, then '[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal.'" *Id.* (quoting *Flores-Ortega,* 528 U.S. at 478). However,

17

if counsel failed to consult with his client, then the court must address whether this alone is indicative of deficient performance. *Id.*

In this case, the Court finds that Petitioner failed to meet his burden to prove by a preponderance of the evidence that he specifically directed Attorney McGovern to file an appeal on his behalf. Rather, the Court finds that the hearing testimony establishes that, at most, Petitioner expressed a potential desire to file an appeal prior to accepting his plea agreement and proceeding with sentencing. The evidence further supports that Petitioner's potential desire to file an appeal never evolved into a directive for Attorney McGovern to do so. "Expressing a desire to appeal is not the factual or legal equivalent of specifically instructing counsel to appeal." *United States v. Taylor*, No. 6:07–12–DCR, 2008 WL 4829873, at *7 (E.D. Ky. Nov. 5, 2008); *see also Regalado*, 334 F.3d at 525 ("But although Regalado *expressed her desire* to file an appeal, she did not *specifically instruct* [counsel] to do so.") (emphasis added); *United States v. Hitchcock*, No. 1:08-cr-1-04, 2009 WL 3754394, at *7 (W.D. Mich. Nov. 5, 2009) (defendant's statement that he "wished to exercise right to appeal" or making his "desire to appeal" known is not the same as specifically instructing a notice of appeal be filed).

At the evidentiary hearing, Petitioner claimed he spoke with Attorney McGovern at their initial meeting in October 2019 about his reservations concerning his plea agreement, and he testified he told Attorney McGovern "I would like to appeal this." Petitioner further testified Attorney McGovern told him on the day of sentencing that he would file an appeal on Petitioner's behalf. Specifically, Petitioner alleges Attorney McGovern told him he would file an appeal on his behalf when the two met immediately following sentencing while Petitioner was in lockup.

By contrast, Attorney McGovern affirmatively testified that Petitioner never directed him to file an appeal until his February 9, 2021 Third Letter, which the Court notes was sent after the § 2255 motion had been filed on December 18, 2020, and over a year after an appeal could have

18

been timely filed. Attorney McGovern further testified he did not meet with Petitioner following sentencing while Petitioner was in lockup, explaining that it would not be his normal practice to speak with his clients about their appeal rights following sentencing unless he had noted procedural issues with sentencing or had previously been directed to file an appeal. Attorney McGovern said this was even more likely to be the case when his clients had accepted plea agreements that resulted in waiver of their appeal rights. Attorney McGovern stated he was sure he had already discussed the plea agreement and the effects of the appeal waiver with Petitioner—as he always discusses such things with his clients.

Attorney McGovern testified to not noticing any procedural errors on the day of sentencing. Attorney McGovern also acknowledged Petitioner had been unhappy with his plea agreement when they first met, but—as Petitioner testified—Attorney McGovern counseled him about the plea agreement, including discussions about withdrawing the plea, and Petitioner was aware that he was waiving his appeal rights. Attorney McGovern testified he believed Petitioner had resolved his concerns with the plea agreement and had decided to proceed with sentencing. Lastly, the Court notes Attorney McGovern stated it would be uncharacteristic for him to counsel a client to proceed with an unsatisfactory plea agreement just so that it could be appealed later. Attorney McGovern testified that he understood his obligation when a client asks him to file an appeal, which is that he must do so, and that he has filed appeals in the past when directed to do so by his clients.

The Court has reviewed the hearing testimony and the parties' arguments. The Court finds that no tangible evidence, aside from Petitioner's testimony, has been presented to establish that Petitioner's desire to file an appeal ever evolved into a timely, express directive to Attorney McGovern to file an appeal. Thus, the Court is left with only Petitioner's testimony on the one hand and Attorney McGovern's testimony and the Government's exhibits on the other. Ultimately,

19

the Court finds Petitioner's testimony is less credible than Attorney McGovern's due to the numerous inconsistencies in Petitioner's statements, as highlighted by the Government. *Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016) ("In he-said, he-said cases . . . the factfinder does not clearly err in picking one 'he' over the other so long as there is support for each account."); *see also Walker v. United States*, Case No. 2:13-cr-20827, 2018 WL 10397093, at *3 (E.D. Mich. Feb. 22, 2018) (where a district court orders an evidentiary hearing regarding a § 2255 motion, the district judge—serving as the factfinder—is in the best position to gauge a defendant's credibility and is entitled to make a credibility determination where there is evidence to support both views of the facts).

Those inconsistencies include but are not limited to: the discrepancies between Petitioner's testimony and Attorney McGovern's; the fact that Petitioner claimed to have requested his legal file in January 2020 but no letter or other evidence exists to support that assertion, at least until Petitioner's Second letter, which was not sent until November 2020; and the fact that Petitioner did not refer to Attorney McGovern's alleged failure to file an appeal as directed until mentioned in the § 2255 motion, which was filed on December 18, 2021. Ultimately, under controlling Sixth Circuit authority in *Regalado*, the Court cannot find that Petitioner "specifically instruct[ed]" Attorney McGovern to file an appeal. 334 F.3d at 525.

In addition, Petitioner does not seem to allege that Attorney McGovern failed to consult with him about his appeal rights throughout the representation. In fact, both Petitioner and Attorney McGovern testified to discussing the plea agreement and whether Petitioner should move to withdraw his plea or accept it and the impact those actions would have on Petitioner's appeal rights. "If the petitioner did not specifically direct his attorney to file an appeal, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes."

20

*Bolden v. United States*, No. 2:08-CR-30, 2011 WL 6291794, at *12 (E.D. Tenn. Dec. 15, 2011) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). "If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult." *Id.*

The testimony supports a finding that Attorney McGovern counseled Petitioner "about the advantages and disadvantages of taking an appeal[,]" *Flores-Ortega*, 528 U.S. at 478; therefore, further discussion on this issue is unnecessary, as it appears Attorney McGovern appropriately consulted with Petitioner about the filing of an appeal. In any case, Attorney McGovern testified that he always speaks to his clients about appeals and waivers of appeal rights because he knows they will be asked about it in court. Here, Petitioner's plea agreement did include an appeal waiver, and Petitioner testified the ramifications of the appeal waiver were discussed with him by Judge Varlan at sentencing as well. When consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to the appeal." *Id*. As detailed above, the Court finds that Petitioner has not established that he directed Attorney McGovern to file an appeal, and therefore Petitioner's ineffective assistance of counsel claim fails the first prong of the *Strickland* test. Accordingly, the Court need not address *Strickland*'s second prong.

Lastly, the district judge has directed the undersigned to include a recommendation as to whether to issue a certificate of appealability on the final issue remaining in the § 2255 motion, which will be necessary for Petitioner to appeal the Court's ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court notes that

21

Petitioner failed to provide any tangible evidence to support his ineffective assistance of counsel claim, relying solely on his inconsistent testimony and the unsubstantiated claims in his § 2255 motion. The Court finds that reasonable jurists would not find that dismissal of Petitioner's claim for ineffective assistance of council is debatable or wrong. The Court therefore **RECOMMENDS** no certificate of appealability be issued to Petitioner.

## V.     CONCLUSION

For the reasons expressed herein, the Court **RECOMMENDS**[8] that the sole remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 1**] regarding Petitioner's claim that Attorney McGovern failed to file an appeal as directed be **DENIED**, and that no certificate of appealability be issued.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).